F4t6gars

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                        10 CR 367(KBF)

 5   JOHNNY NUNEZ GARCIA,

 6                Defendant.

 7   ------------------------------x

 8                                    New York, N.Y.
                                      April 29, 2015
 9                                    12:00 noon

10
     Before:
11
                     HON. KATHERINE B. FORREST,
12
                                          District Judge
13

14                         APPEARANCES
     PREET BHARARA
15        United States Attorney for the
          Southern District of New York
16   MICHAEL FERRARA
          Assistant United States Attorney
17
     GERALD DICHIARA, ESQ.
18        Attorney for Defendant

19

20

21

22

23

24

25
```

F4t6gars

1          THE COURT:  Good afternoon, everyone.  Please be

2    seated.

3          THE DEPUTY CLERK:  Counsel, please state your names

4    for the record.

5          MR. FERRARA:  Good afternoon, your Honor.  For the

6    government, Michael Ferrara.  And with the Court's permission,

7    I am joined by intern Jonnah Hollander.

8          THE COURT:  Good afternoon to both of you.

9          MR. DiCHIARA:  Gerald DiChiara for Johnny Garcia.

10          THE COURT:  Good morning, Mr. DiChiara.  The Court

11    notes that Mr. Nunez Garcia is here and present in the court

12    this afternoon.  Good afternoon, sir.

13          Mr. Nunez Garcia, I see that you are being assisted by

14    the interpreter who will translate from English into Spanish

15    and you are wearing the equipment.  From time to time the

16    equipment malfunctions -- the battery runs out or something

17    else happens -- so if you can't hear the translation, then make

18    sure either Mr. DiChiara knows or raise your hand and we'll

19    make sure it gets fixed right away; all right?

20          What I wanted to do was first set the stage for this

21    resentencing proceeding for Mr. Nunez Garcia by setting out in

22    one place the procedural history of this case, what brings us

23    here and my interpretation of the scope of the mandate so that

24    we understand how far the Court can or cannot go in this

25    proceeding.  Then what I propose to do is set forth on the

F4t6gars

1    record all the materials that I have received and then we'll

2    take it from there.  I will obviously hear from counsel and

3    from Mr. Nunez Garcia to the extent that he would like to

4    address the Court before resentence is imposed.

5              Does that sound like a reasonable way to proceed from

6    your perspective or would you like to do something else?

7              MR. FERRARA:  That's fine with us, your Honor.

8              THE COURT:  Mr. DiChiara?

9              MR. DiCHIARA:  That's fine, Judge.

10             THE COURT:  So it is going to take me a couple minutes

11   because as you folks know I was not the original sentencing

12   judge on this matter, Judge Griesa was.  So I have spent a

13   significant amount of time learning about this case and about

14   Mr. Nunez Garcia in particular.

15             As you folks are certainly aware, Mr. Nunez Garcia was

16   originally arrested on gun charges in the state in

17   January 2010.  He was arrested in fact according to Probation,

18   which I confirmed on January 5th, 2010.  He was held in state

19   custody until he was writted into federal custody in May 2010.

20   That of course does not mean that that duration of time is

21   reflected in his federal sentence.  He was still "on loan" from

22   the state at that time.  Mr. Nunez Garcia was then convicted in

23   the state of the gun charges in July 2010 and sentenced to

24   principally a five-year term.  That sentence runs from the time

25   that the defendant is in state custody, stopped when he

F4t6gars

1   formerly came into federal custody, which I understand was

2   actually after his sentencing originally by Judge Griesa and so

3   that would be March 2013 and that is based upon information

4   from Probation.  So he has some remaining amount of that

5   sentence undischarged at this time.

6            At the sentencing of the crime of conviction before

7   this court, which I will get to in a moment, Judge Griesa did

8   state that the federal sentence should run concurrently with

9   the state conviction.  One question for this Court today is the

10  5G1.3 issue that was raised on appeal and that is reflected in

11  the submissions by the parties, which is the extent to which

12  Mr. Nunez Garcia should get credit stated in the judgment from

13  this Court for the period of time during which he was in state

14  custody, which effectively is January 5th, 2010 until either

15  January 2013 or March of 2013 depending if you judge it from

16  the formal writ back to federal custody and therefore no longer

17  on loan, which is March 2013 or the original date of

18  sentencing, which is January 10th, 2013.  We'll talk about that

19  more in a moment.

20           At the trial itself Mr. Nunez Garcia was convicted on

21  two counts -- Count One, which he was convicted on a conspiracy

22  to distribute and possess with intent to distribute crack and

23  there was a special verdict where the jury found specifically

24  that it was 280 or more grams of crack and then also a firearm

25  charge.  That sentencing was on January 10th as I said.  The

F4t6gars

1    judgment issued on January 11th, 2013.  At the sentencing Judge

2    Griesa broke the sentence into two pieces.  He imposed a

3    240-month term, with 120 months for Count One and 120 months

4    for Count Two.  In connection with Count Two, Judge Griesa made

5    a judicial finding that the firearm at issue in Count Two had

6    been discharged and rather than using that as a 3533(a) factor

7    used it instead to impose the mandatory minimum sentence for a

8    discharged firearm which was 10 years.  Under Supreme Court

9    precedent, that is the *Alleyne* case, that was error which the

10   government conceded and the Second Circuit then remanded this

11   for resentencing and it was certainly raised by the defendant

12   in connection with this appeal.  However, at his sentencing as

13   well, it is important to the Court and I note that Judge Griesa

14   did spend time discussing the defendant's particular

15   background, what were deemed by Judge Griesa to be mitigating

16   circumstances in terms of his childhood and family situation

17   and Judge Griesa also spent some time discussing his particular

18   view as to the duration of the sentence, which was 20 years,

19   240 months, as a sentence which he believed was in my words

20   sufficient but not greater than necessary because he said it

21   was effectively long enough.

22          So on appeal there were a number of issues raised.

23   There were both issues as to the conviction itself as well as

24   issues as to the sentencing.  As to the conviction there were

25   issues raised as to evidentiary rulings as well as sufficiency

F4t6gars

1     of the evidence.  The Second Circuit in its summary order,

2     which brings us here today which was issued in October of 2014

3     did affirm the conviction.  It did so implicitly by stating all

4     other arguments were deemed without merit and it specifically

5     then remanded the matter, this sentencing, for purposes of

6     imposing a five-year mandatory minimum for Count Two.  In other

7     words, eliminating the firearm being discharged as not being

8     consistent with something the jury was specifically asked to

9     find as well as to deal with the 5G1.3 issues.

10           Now, I say this and I am going to talk about a little

11    bit more because now we're about to go into the scope the

12    mandate.  The scope of the mandate became a little bit more

13    complicated by the manner in which the government briefed these

14    two issues on appeal.  We're not putting aside all the issues

15    relating to the conviction itself but dealing now with the

16    sentencing.  The reason it becomes somewhat more complicated is

17    that typically when there is an error in sentencing and there

18    is a remand simply to resentence to fix a particular error and

19    there is an instruction on that error, the resentencing is a

20    narrow one.  It is quite limited and it is limited to fixing

21    the error.  Here, however, the government briefed the 5G1.3 and

22    the *Alleyne* firearm issue effectively together in back to back

23    sections in their appeal brief saying, We consent to the

24    resentencing on the firearm and by the way you need not reach

25    the ineffective assistance of counsel because there is going to

F4t6gars

1    be a resentencing opportunity.  That implies, though is not

2    explicit, that the resentencing opportunity would be a de novo

3    resentencing opportunity as opposed to the narrowly limited

4    resentencing opportunity.  So it opens the question as to the

5    scope of the mandate.

6           Now, the Second Circuit in its mandate because as you

7    folks know and case law suggests it is hard to go back to the

8    mandate itself and read the mandate and not go beyond the

9    actual language of the mandate or importantly here the spirit

10   of the mandate.  The mandate here, the Second Circuit noted in

11   its very short summary order the *Alleyne* issue and then stated

12   right after that, Accordingly -- I think the word accordingly

13   is important because it is directly connected to the *Alleyne*

14   issue -- we instruct the Court to vacate and resentence with a

15   mandatory minimum on Count Two of five years in keeping with

16   the jury's factual findings that Garcia used and carried a

17   firearm in furtherance of the conspiracy.  The Court then

18   stated, We decline to address Garcia's argument that he was

19   deprived of ineffective assistance of counsel at sentencing.

20   The opportunity for resentencing renders that argument moot.

21          So that again doesn't quite answer the question as to

22   whether this is under the Pepper case, which is the Supreme

23   Court case from 2011, this is a "clean slate proceedings" or

24   whether the mandate is a narrow one.  In the Pepper case, the

25   Supreme Court noted that a criminal sentence is a package of

F4t6gars

sanctions that the District Court utilizes to effectuate its

sentencing intent and that altering one portion of that package

may undermine the intent.  Also, the Supreme Court has said

that when you vacate the sentence that has generally particular

implications in terms of eliminating the prior ruling

altogether.  However, the Second Circuit has said that in

general resentencing should be narrowly construed and that is

where the Second Circuit has gone into the narrow view of the

spirit of the mandate.

So with that said I want to go into a couple

propositions and I am almost done with this, but I did want to

lay it out in case there is any question later as to the law

and principles I am relying on.  You folks I am sure are aware

of and would agree with the various principles relating to the

law of the case and the importance of the law of the case not

to allow or have re-litigation of issues litigated and finally

resolved as well as due process that can come into play with

that.  I am sure you folks are also aware of the general

principles that resentencing occurs under the various factors

of 3553(a) and are also aware the principles relating to the

Second Circuit's case law on when a resentencing court even

consistent with a narrow mandate may resentence in a manner

that is lower than the original sentence imposed or higher than

the original sentence imposed depending upon how the defendant

is or appears to the Court as of the date of resentencing.

F4t6gars

1    That is in the *Coke* decision in 1968 where a defendant's

2    conduct since originally sentencing may be taken into account;

3    it is the *Quiatirei* case of 2002, which stands for a very

4    similar proposition; the *Core* case in the Second Circuit 1997,

5    and the *Werber* case (2d Cir. 1998).  These cases also indicate

6    that resentencing after elimination of convictions for

7    particular counts is a different kettle of fish if you will

8    than a resentencing after simply a remand with a particular

9    instruction than elimination of account is generally more de

10   novo.  Resentencing after an error is generally quite narrow.

11   That is consistent with the mandate rule under the *Bryce* case,

12   which is a Second Circuit 2002 case.

13            Therefore, based upon all of these principles and the

14   finality, which is clear from the parties' discussion in terms

15   of the appeal, and what was not raised on appeal or what was

16   raised on appeal, I see the task before this Court as a

17   relatively narrow one, but one which is consistent with the

18   Court's ability to take into account the additional facts and

19   circumstances which have come to light since original

20   sentencing.  The principle finality suggests that the other

21   issues that were not raised originally as to the sentencing, in

22   other words, whether the particular findings as to the

23   enhancements were appropriately done for the offense

24   calculation for the guidelines, those are gone.  Those are done

25   and final at this point in time.

F4t6gars

1        The three issues before the Court currently relate to

2   the following:  One, the imposition of a mandatory five-year

3   minimum for the firearm count.  However, that implicitly then

4   comes with an instruction to the Court implicitly to engage in

5   a 3553(a) analysis of the manner in which the firearm charge

6   ought to be dealt with in terms of 3553(a) and whether or not

7   the 10-year mandatory minimum, which the Court had previously

8   imposed in error also happened to correspond with the Court's

9   assessment or would correspond with the Court's assessment of

10   3553(a) factors.  The second issue is the 5G1.3 issue and the

11   third issue is dealing with whatever new evidence is before the

12   Court in the manner that the Court deems appropriate under

13   3553(a).

14        So with that said I would state that nothing in the

15   transcript indicates that Judge Griesa would have imposed more

16   than 10 years for Count Two even if undertaking a 3553

17   analysis.  So this Court needs to be mindful of Second Circuit

18   precedent that while the philosophy of the second sentencing

19   court may be different from the first that is not to inure to

20   the detriment of the successfully appealing defendant and

21   therefore the Court would not impose more than 10 years under

22   any 3553 analysis for the firearm count.  That is of course

23   separate from the manner in which the Court reviews the conduct

24   since the last sentencing.

25        I think that gives you a sense of the way that I

F4t6gars

1    interpreted the mandate.  I am now going to state the materials

2    I have received, which will go very quickly and turn it over to

3    you folks.  Before I do that, do either of you want to address

4    the scope of the mandate?

5             MR. FERRARA:  Yes, I would, your Honor.  I apologize

6    if our brief was not clear.  If Mr. Garcia had not engaged in

7    the bad behavior outlined in our brief since last sentencing,

8    we would not be asking for an increase in sentencing.  I would

9    still be arguing for 20 years based on the fact that I think in

10   light 3553(a) and the mandate, the Court is still entitled to

11   impose 20 years.  That is to say the 10 years on Count Two.  I

12   would still be arguing for that.  The only reason the

13   government is arguing for more time here is because of the

14   conduct since the original sentencing.  I think that is

15   absolutely clear law.  Even the cases the defense cites

16   Quiatirei, which your Honor just cited make it clear that

17   issues since sentencing may be considered by a resentencing.

18            THE COURT:  I understand that.  That is the *Coke*

19   indicate, the *Core* case, Quiatirei case.  There is a whole

20   variety of cases which go to that proposition, which is you

21   sentence a defendant as he stands before you at the time of

22   resentencing.

23            The confusion that I ran into frankly, Mr. Ferrara,

24   and I didn't think you were necessarily hanging your hat on de

25   novo resentencing, I didn't get that from your submission, but

F4t6gars

1    because you had raised the issue with respect to Mr. Lopez and

2    his 20-year sentence and he had pled, it was suggestive of a

3    rejiggering, if you will, that could be construed as

4    potentially different from just the disciplinary issues which

5    have occurred since.  His case, I will just say it right now in

6    terms of how I see Lopez as different because he of course

7    pled, but he also pled to a plea agreement where he pled that

8    he had discharged a firearm.  So he had a mandatory 20 years.

9    He had a mandatory 10 on the drug count and a mandatory 10 on

10   the firearm count.  So his situation itself is sui generis as

11   is the defendant Mr. Nunez Garcia.  So that is the reason for

12   my laying it all out and just in case anybody was confused.

13          It sounds like you are not disagreeing with my view of

14   the mandate?

15          MR. FERRARA:  Absolutely not, your Honor.  We cited to

16   Lopez because while your Honor is right that there are

17   differences of course, I also thought that it was worth

18   mentioning because I do think that it is fair to say that just

19   in terms of the 3553(a) factors as to Count Two, there is some

20   injustice to the idea that Mr. Lopez would receive more than

21   Mr. Garcia would putting aside -- that is the argument about

22   why 20 is appropriate.  That is why I put Mr. Lopez in there.

23   That is the only reason.  I was not in any way suggesting

24   because Mr. Lopez got 20, Mr. Garcia ought to get more than 20.

25          THE COURT:  I understand.

F4t6gars

1          Mr. DiChiara, would you like to address the mandate?

2          MR. DiCHIARA:  Quickly I would point out I think the

3     Court is thinking along these lines, but I would point out in

4     the *Malki* case which I cited that Court referenced *United*

5     *States v. Raftis*, which says that the law construes ambiguous

6     language in a sentence pronounced favorably to imprisonment.

7     So any ambiguous language should be decided in favor of

8     Mr. Nunez Garcia.

9          THE COURT:  I agree with that and noted that in your

10    submission and that is the reason why even though the Court

11    finds some ambiguity in the manner in which the mandate came

12    down, I think it is correct to keep it narrow, which means

13    we're not resentencing today for in terms of all issues are not

14    open.  Count One is as it was.  The findings as to the offense

15    calculation but for the revised guidelines from 2014 which

16    bring it down by two levels for everyone remain the same.  The

17    issue is really Count Two, the imposition of a different

18    mandatory minimum and the consideration of 3553(a) factors

19    solely with respect to Count Two and then the 5G1.3.

20          MR. DiCHIARA:  Fine, Judge.  Do you want me to address

21    the issue of the prison infractions now?

22          THE COURT:  Let me just recite the materials and then

23    I will turn it over to you folks.  It will go very quickly now

24    that I have gotten that first issue out of the way.  I have

25    looked at a number of materials in connection with the

F4t6gars

1    sentencing proceeding -- the prior trial transcripts to inform

2    myself as to the 3533 factors; the prior sentencing transcripts

3    for Mr. Nunez Garcia of January 10, 2013; the judgment of

4    January 11th, 2013; the briefs on appeal both from Ms. Messina

5    and her replacement counsel due to the ineffective assistance

6    claim; the mandate; the PSR of April 23rd, 2012, which has not

7    been updated; the materials relating to Mr. Javier Lopez, in

8    particular as I mentioned the plea agreement this Court, I,

9    also did his sentencing and I reviewed my prior sentencing

10   transcript.

11          I have also looked for this defendant at the forensic

12   psyche evaluation from Dr. Drob dated October 30th, 2011.  I

13   requested that from Ms. Messina.  It was reflected in her prior

14   defense submission and I thought it might be useful.  I put

15   that under seal in this matter and it will be available.

16   Counsel should have had that sent to them yesterday from my

17   deputy.  I have also looked at Messina's sentencing submission

18   dated December 5th, 2012.  Then Mr. DiChiara's three

19   submissions date April 1, 2015, with attachments A through D;

20   his April 23rd 2015 with attachments A through H; his

21   April 27th submission date attaching two letters, one from the

22   defendant's mother and one from his sister.  The government had

23   a submission which I reviewed dated April 9th, 2015, which has

24   attached to it 51 pages of disciplinary records.

25          Mr. DiChiara, given the scope of this proceeding are

F4t6gars

1     there any objections to which you now want to raise in

2     connection with the PSR of April 2012?

3              MR. DiCHIARA:  No, Judge.

4              THE COURT:  Let me just say the offense level is

5     adjusted slightly because of the two-level reduction and the

6     changes as of November 2014.  So the offense level is now 42

7     and criminal history category of three, which corresponds to

8     360 to life.  However, the Court is not going to resentence as

9     to Count One.  I just note that for the record.

10             Let's turn it over now to Mr. Ferrara, Mr. DiChiara

11    and then Mr. Nunez Garcia.  The way I do it, I have the

12    government go first and the defense counsel and then the

13    defendant as opposed to defense counsel first.

14             MR. FERRARA:  Understood, your Honor.

15             Your Honor, first I want to try compartmentalize my

16    remarks to make it clear what I am and am not arguing for as we

17    just discussed.  First, let me just address why a sentence of

18    10 years on Count Two is still the appropriate sentence despite

19    the change.  That is to say putting aside Mr. Garcia's

20    post-sentencing conduct why even if I were sort of arguing

21    Judge Griesa years ago had he not found a discharge why 10

22    years would be appropriate sentence on Count Two and then I

23    would like to address the prison conduct and why that takes us

24    over 10 years as to Count Two.

25             So your Honor has said the Court has reviewed the

F4t6gars

trial transcript.  I was the AUSA who tried this case.  The

evidence of the use of guns was really sensational.  There were

two different shootings in this case, two different actual

shootings that resulted in harm to human beings.  There was a

lot of testimony about being discharged, but in particular two

that really reflect the utter disregard that this defendant has

for people and for human life.  One was the shooting of Natalie

Santana where the defendant was outside of the building where

he sold crack and there was an argument involving some women

and in order to scare them off he fired a weapon at the ground

and the bullet ricocheted and struck one of the women.  She

thank God was not seriously harmed.  An ambulance had to come.

That is one.  This idea that there is a problem with these

women so I am going shoot this gun because, as cooperator put

it, they were heating up the spot.  He didn't want to call

police attention to that location.  His way of putting it was

these women are heating up the spot so get me my gun because

they are heating up the spot.  That is to say potentially

attracting police attention.

The second one, your Honor, was really sort of a

terrible piece of testimony from a third cooperator.  Eddie

Valez described a night when he looked out of his apartment

window and saw the defendant and another person outside the

window.  Eddie Valez had just heard some gunshots and looks out

his window and sees the defendant and another person jumping

F4t6gars

1     over the fence.  Though Mr. Valez did not see who actually shot

2     through the window next door to his, he did see Mr. Garcia with

3     something.  He wasn't sure what.  The jury was entitled to

4     infer and this Court is entitled to infer that that was a gun

5     and that Mr. Garcia was involved either himself or with the

6     person next to him in shooting a person who lived next door to

7     Mr. Valez.  The reason that Mr. Garcia would have wanted to

8     shoot that person was that as Mr. Valez testified those

9     apartments were associated with a gang called the Wheeler Boys.

10    Mr. Garcia was in the gang called Dominicans Don't Play and/or

11    involved with a group of guys who sold crack on Elder Avenue,

12    which is a block away from Wheeler in the Bronx.

13            So Mr. Garcia possibly thought that he was or his

14    associate who was with him was shooting a member of the Wheeler

15    Boys in that apartment.  There was testimony both from

16    Mr. Valez and another cooperator about seeing that person.  The

17    man managed to drag himself out of the first floor apartment.

18    There is the usual testimony about blood being everywhere from

19    gunshot wounds.  Again, it is sort of a miracle that this man

20    lived and in fact had nothing to do with the Wheeler Boys.  A

21    completely innocent bystander of this.  A man who lived in his

22    apartment in which these other crack dealers also happened to

23    live in but had no association with these men.  Both Mr. Valez

24    said he had no association, a member the Wheeler Boys who

25    testified at the trial, Mr. Torres, also said that man had no

F4t6gars

association whatsoever with the Wheeler Boys.  So again just an

innocent person whom Mr. Garcia either shot or helped another

person to shoot and again just who happened to live.  Otherwise

this would have been a murder trial.  So based on that

testimony, Judge Griesa is entitled as a matter of 3553(a) to

find that Mr. Garcia had discharged a weapon in connection with

his drug dealing with an utter disregard for human life and in

an attempt to kill a person who he believed was a rival crack

dealer.

        For those reasons, your Honor, as well as all the

other testimony, and I will not recount it, your Honor one of

the things that we had at trial, and I apologize I don't have

it now, but there were guns found in an apartment that

Mr. Garcia controlled.  He had the keys on him to that

apartment.  That conduct predicates his state conviction.  We

also brought the officers in to testify here.  There were a

couple handguns.  The papers really cannot describe.  There was

a couple handguns, a shotgun and then there was a machine gun,

your Honor.  It was to the point where our NYPD officer who is

a first grade detective of the NYPD who has been an officer for

over 20 years had never seen anything like it.  It is a Belgium

machine gun.  It has sort of a circular type of loading

cartridge.  It is an unusual weapon.  It is not even like a

small Uzi.  This was a large machine gun that we brought into

court that was found in an apartment that Mr. Garcia controlled

F4t6gars

1    to which he had the keys and cooperators said that is where

2    they stored crack and guns.  We also found crack in the

3    apartment.

4           So based on all of that Judge Griesa would have been

5    entitled and I would have asked Judge Griesa to impose 10 years

6    regardless of what the mandatory minimum would have been.  That

7    is the sort of the first part of my argument why no less than

8    10 should be imposed on Count Two.  I would end there if it

9    were not for Mr. Garcia's conduct since his original

10   sentencing.  Again, I have submitted the disciplinary records.

11   I don't need to go through it.  Mr. Garcia has shown no sort of

12   remorse, no rehabilitation since he has been in jail.  He has

13   engaged in assaults, bizarre sexual behavior involving guards,

14   throwing liquid on guards, assaulting inmates and guards.  Your

15   Honor is entitled in light of that post-sentencing conduct to

16   sentence the defendant to more than 10 years on Count Two.

17   Again only because of that post-sentencing conduct.

18          THE COURT:  So in the government's view to what extent

19   should the Court take into consideration the fact that

20   relatively severe penalties have already been imposed on the

21   defendant for each of those disciplinary infractions, including

22   lack of visitation, time in the SHU, loss of commissary

23   privilege, good-time credits, etc.

24          MR. FERRARA:  I am not suggesting that your Honor

25   should not take that into account.  It is absolutely

F4t6gars

appropriate for the Court to do that.  I will say only that

those are administrative penalties.  It is appropriate here to

say to the defendant -- I would say that the administrative

penalties of the Bureau of Prisons is able to impose have not

dissuaded the defendant from continuing his conduct.  He is not

getting the message.  It is appropriate for this Court and the

Court ought to send a stronger message to this defendant that

this behavior is unacceptable, that he cannot simply sort of

get away with it.  That is to say, behave in this way, maybe

lose some commissary, some time in the SHU, but that he can

come back in front of a court of law like this and it will not

be part of the ledger that a court considers.  I think that is

the wrong message.  Since the defendant clearly is not getting

the message from the Bureau of Prisons I think it is entirely

appropriate for this Court to send a stronger message by

increasing his sentence, his term of imprisonment here today.

          Finally, your Honor, as to 5G1.3 issue we concede that

given the change in the guidelines that the defendant is now

eligible for that.  However, I would ask the Court to be

careful here.  I am happy to help in any way I can.  This is

very tricky stuff the way of Bureau of Prisons calculates time,

what credit a defendant gets preconviction.  When he also has a

state sentence.  Here I have spoken to the Bureau of Prisons as

well.  I gave my best to find some of the folks who have been

calculating Mr. Garcia's sentence.  What I understand but I am

F4t6gars

1    not positive about these numbers, and I am happy to give more

2    clarity for the Court, Mr. DiChiara and I can call your Honor's

3    chambers, my understanding is that the Bureau of Prisons has

4    given Mr. Garcia some credit for time served before

5    January 2013.  I believe it is about a year that he received

6    credit by the Bureau of Prisons for time he served even though

7    he was here on a writ.  My understanding is the day he was

8    sentenced in the state, which I want to say was maybe January

9    of 2012, and I can find these numbers for your Honor, I

10   apologize I don't have them at my fingertips.  The day he was

11   sentenced in the state is the day that the Bureau of Prisons

12   stopped giving him credit.  That period of time, from the day

13   of his state sentencing until I understand it to be January of

14   2013 when Judge Griesa imposed sentence but I will look into

15   whether it was March, that that period of time is what

16   Mr. Garcia ought to get credit for.

17        THE COURT:  It is your view that everybody agrees he

18   should get credit for the portion of time that he was arrested,

19   which we all agree, and I will hear Mr. DiChiara, is

20   January 2010, which I believe is January 5th, 2010, where he

21   was in state custody serving state time and not given federal

22   credit.  Whatever that time period is.

23        MR. FERRARA:  I am only suggesting that I believe some

24   of the credit was given.  Sorry that I didn't put a fine enough

25   point on this.  The reason I mention this is what I am

F4t6gars

concerned about is if your Honor styled a judgment that the

defendant should receive credit for January 5th, 2010 through

March 2013, I just worry that might be over inclusive in the

sense BOPs may have already given him some credit for that.  Or

if your Honor was thinking about lowering the sentence based on

those numbers, it might be that the Court ended up giving

Mr. Garcia more credit than the Court wanted to.  So one way to

do this is not to compute the time but is to say in the

judgment, which is what I understand from the Bureau of Prisons

folks with whom I spoke, again we can double-check this or I

can make sure Mr. DiChiara is comfortable, is that if your

Honor styles the judgment as whatever amount of time your Honor

wants to impose and then says with a reduction pursuant to U.S.

Sentencing Guidelines 5G1.3 of the amount time served on the

state conviction.  My understanding is that Bureau of Prisons

will get that message and will give him then the full credit.

Again, I am happy to do this in any way that is comforting to

the Court so we have the right answer.  I want to make sure

that we don't go over inclusive or under.

THE COURT:  I don't disagree with you that will be the

way I would normally do it.  Frankly, what I wonder about is

whether or not I need to come up with the time period myself

because it says under 5G1.13(b)(1), The Court shall adjust the

sentence for any period of imprisonment already served.  And so

it is your view that the adjustment could be in the form of a

F4t6gars

generalized statement as opposed to a number because the other
way of doing it is to say that it is January to January, the
three years and to say if the BOP has already calculated in
giving him credit for any portion of that that should be taken
into consideration.

MR. FERRARA:  That I think would work.  I only worry
because I know the Bureau of Prisons was entirely clear with me
that some portion of that has been credited.

THE COURT:  If they've already taken some portion of
those three years, but it is three full years in total, into
account then he shouldn't get it twice but he should certainly
get the other two full years.

MR. FERRARA:  Totally agree.

THE COURT:  So we'll figure out how to word it and I
understand your point.

MR. FERRARA:  Thank you, your Honor.

THE COURT:  Mr. DiChiara.

MR. DiCHIARA:  Judge, the government says that they
only would ask for an increase based upon the infractions yet
they always bring up something that I am really not comfortable
with addressing since I wasn't trial counsel, which is the fact
that the underlying case to get the Court to sentence the
defendant more harshly on Count Two.  It always seems to me
when you give a 924(c) and I think that is because it is
contained in the guidelines somewhere and frankly I didn't know

F4t6gars

1   we were going to be focusing on this issue, but that he get

2   five years if it 924(c), if it is the other one you get seven,

3   and if it is the more hash you get 10 and that is in the

4   guideline and the government always asks for a guidelines

5   sentence on anything and yet here they are asking beyond that

6   and I haven't ever seen that.  I have never come across that

7   situation.

8          THE COURT:  As principle, and I understand in the

9   terms of the government's position but in terms of the Court's

10  discretion would you agree with me that the Court both -- well,

11  it is really only relevant in terms of a resentencing court has

12  the discretion both it is required that I impose the five years

13  but then the discretion to take into consideration 3553(a) for

14  Count Two, which may or may not lead me above five years as I

15  can always do even in connection with sentencing anybody on a

16  and 924 count.  The guidelines are the guidelines and advisory

17  only.

18         MR. DiCHIARA:  I understand that, your Honor, but when

19  we're dealing with the spirit of the mandate here, it seems

20  something is fundamentally wrong when a person gets a 10-year

21  count, goes up on appeal, gets reversed and the Court tells

22  them that you have to impose a five instead of 10 and then we

23  say, Well, we can forget what the Court of Appeals said and we

24  can still do 10 because it is in your discretion to do then.  I

25  think there is something fundamentally wrong with that kind of

F4t6gars

argument.  I also think that everything that the government has
said was considered by Judge Griesa and I point that out in my
brief.  The sentencing disparity argument, the trial, the use
of the guns, everything.  Judge Griesa chose to give this
defendant the lowest possible sentence that was available to
him and to underline that he tried to give him the most lenient
sentence that he could under the statutory limits.  We see that
when Ms. Messina asks him to run it concurrent with his state
time, he does.  I believe that if Ms. Messina had asked him to
give him credit for under the 5G argument that we're dealing
with now, he would have done that also.

So I believe that there is a mandate here that should
be followed.  I believe Judge Griesa, who was the trial judge
who sat with this defendant four years and who was very much
affected by his horrendous upbringing and his horrendous life
that he lived for a very young man, had hope for this man.
Now, I understand the government says he gets in trouble and
everything, but none of the infractions have not been punished
already as the Court has noticed, including the loss of 18
months of visitation for a person in prison.  He had no phone
contact, not contact with the outside world and he has no
visits for 18 months.  The punishments he seems to be enduring
are quite horrendous for a person who has a 75 IQ, who also has
psychological problems.

And I read the report that your Honor was able to

F4t6gars

1    obtain in full and it is quite clear this is a very troubled

2    person but that there might be hope.  The report says that

3    there might be hope.  I have noted that when I looked at the

4    infractions in Allenwood there are two infractions.  They are

5    basically for not being where he was supposed to be when he was

6    supposed to be there and those two infractions are the only two

7    infractions he has.

8         On the other hand he is enrolled in classes.  He is

9    going for his GED.  He works.  I outlined the whole week for

10   your Honor.  I think that in keeping with Judge Griesa who was

11   the judge over this man for four years, I think that 10 years

12   on Count One, five years on Count Two with credit for the jail

13   time that he served in New York State is appropriate.

14        Thank you, your Honor.

15        THE COURT:  Thank you, Mr. DiChiara.

16        Mr. Nunez Garcia, would you like to address the Court

17   before sentence is imposed?

18        MR. DiCHIARA:  He said he is nervous, Judge, and would

19   rather not.

20        THE COURT:  I understand there is no requirement that

21   you say anything, Mr. Nunez Garcia.  It is just you can if you

22   want to.  The Court always invites a defendant to speak and to

23   bring anything that he wants to the Court's attention.  You

24   don't have to.

25        Let me describe for you folks how I arrive at the

F4t6gars

1    appropriate sentence in this matter.  As you all know I am

2    guided by the 3553(a) factors primarily in connection with this

3    resentencing proceeding.  The guidelines are not as much a part

4    of it, though.  They are part of it to the extent that the

5    range informs the Court generally speaking as to how some of

6    the factors for the combined crimes of conviction would be

7    treated in terms of ranges of potential imprisonment and to

8    that extent they are informative, but as with all guidelines

9    they are advisory only and not binding on the Court.  So I look

10   instead to 3553(a) and ask myself in terms of particularly here

11   and solely here with respect to Count Two as well as the

12   disciplinary proceedings and conduct underlying those

13   proceedings what the history and characteristics are of this

14   defendant and disciplinary proceedings are relevant to that.

15   Then in terms of the nature and circumstances of the offense of

16   Count Two, that is really the nature and circumstances that is

17   reflected in the trial transcript.

18           In going through the trial transcript, I think we can

19   all agree that the conduct underlying Count Two is as serious

20   really as it gets without murder.  Count Two conduct relates to

21   the gun charge and there are multiple businesses.  Indeed, it

22   is like a war zone out there when you review the transcript.

23   And as Mr. Ferrara noted there are multiple instances of

24   firearms being used in support of the drug trafficking business

25   that Mr. Garcia was a very important participant in and leader

F4t6gars

in.   The shooting of the individual at 1160 Wheeler when he was

shot three times including in the abdomen in July of 2009 is

one instance that was obviously lots of testimony about that

from difference angles during the trial.   There is also

shootings in the summer of 2009, a shooting at Chris Torres and

there is the running up Wheeler Street shooting guns that is

also included in the transcript.   There is the actual shooting

of Natalie Santana, which Mr. Ferrara raised in December of

2009, where she was shot in front of 1151 Elder Avenue which is

not actually a way to try to prevent there from being police

attention to a particular area.   There is eyewitness testimony

as to that in that Mr. Nunez Garcia was also the possessor of a

key to a location that stored a number of very serious

firearms.

          So the seriousness of the offense underlying Count Two

is not really something which I think people could reasonably

debate.   The question is what is the proper punishment for

that.   I do believe that the 3553(a) factors are appropriately

considered here.   I am very mindful in paying great attention

to the mandate and the spirit of the mandate only to look at

Count Two, but I don't find anything in the transcript having

read it very carefully of Judge Griesa's sentencing that

indicates in absence of a 10-year mandatory minimum that

3553(a) factors would have led him to a different sentence.

For instance, there would be many ways as I so indicated but

F4t6gars

1    one way would have been to have suggested I am bound by this

2    and I would give you less if I could and I don't find that in

3    terms of the gun charges.  I do find, however, that he spent a

4    fair amount of time on mitigation in terms of why he would not

5    go over 20 years generally speaking and I find that to be very

6    important because when one considers 3553(a), it indicates an

7    outer bound to where Judge Griesa at that time believed this

8    matter should go.

9             This brings me to the history and characteristics of

10   the defendant, which comes in two pieces.  One, the history and

11   characteristics that should be taken into consideration with

12   regard to Count Two in terms of sentencing on that count ab

13   initio for that count.  So the history and characteristics

14   evidence in the crime of conviction itself and during the trial

15   but then also very importantly the history and characteristics

16   since that time.  Together I look at that in terms of

17   indicating whether or not there is a disregard for life or a

18   disregard for the safety of others or a tendency for use of

19   force or the potential for use of force or the likely use of

20   force.  Here I note that several of these infractions frankly

21   don't indicate much apart from a young man who desperately and

22   understandably does not want to be in prison and a very young

23   man at that.

24            So several of the infractions, while behavior that is

25   not to be commended, is not something that the Court would

F4t6gars

impose a particularly lengthy sentence for because the Court

does not believe that the disciplinary measures are

insufficient as to those.  I am talking about the sexual

conduct as a for instance.  It is not commendable but I believe

it has been adequately dealt with.  There is no indication that

he was actually physically able to leave the cell and aggress

upon anybody.  He was just displaying himself to the

corrections officers.  But the conduct which does concern the

Court is the kicking of the guard, the throwing of the liquid

at guard, although that less so but still a type of assault,

the finding of the assault that was known presentencing but not

confirmed and verified until post sentencing as well as the

altercation with the other inmate and then of course there is a

threat to a corrections officer that the defendant in words or

substance would be "getting" the correction officer at some

point in time.  Those together concern me because of the

possible use or resort to force in terms of the defendant's

characteristics and his display of consistent antisocial

behavior.  I am aware and I have taken into consideration

exactly what Mr. DiChiara had mentioned, which is the 180 days

of no visitation and no phone which is actually extraordinarily

severe, and that was in connection with the corrections

officers incident, the incident with respect to the physical

assault that was in many ways more severe as the inmate did not

carry a severe penalty.

F4t6gars

1          Based upon all of my considerations of all the factors

2     under 3553(a) relating to Count Two and the conduct that is

3     before the Court in terms of conduct known to have occurred

4     post sentencing, I find that a sentence of 120 months on Count

5     One is appropriate and I am not touching that obviously.  As I

6     said I don't read the mandate as giving me a scope to do that

7     but also 120 months on Count Two.  That 120 months is comprised

8     of the five year mandatory minimum but an additional five years

9     based upon the Court's review of all the factors under 3553(a)

10    as I have just described them including the conduct post

11    sentencing.

12          I also find as we discussed that the defendant should

13    be given credit under 5G1.3 for the time spent in serving his

14    state sentence that we discussed.  So the way the Court will

15    word that is from the date of arrest until the date of the

16    imposition of the original sentence here, which is January 10,

17    2010 to January 2013 with an instruction to the Bureau of

18    Prisons not to give the defendant credit twice for time served

19    but to certainly give the defendant full credit for time served

20    for the state sentence during that period of time whatever that

21    may be.

22          I do believe that together this penalty serves the

23    purposes of 3553(a) and it is sufficient but not greater than

24    necessary to achieve the purposes 3553(a).  I will maintain the

25    five years of supervised release to run concurrently on each

F4t6gars

count that Judge Griesa imposed.  Though, I would state that

based upon 3553(a) factors certain conditions differently than

were noted in the judgment that was imposed by Judge Griesa.

This is based upon the Court's view as to additional conduct

since original sentencing.

So there will be certain mandatory conditions:  That

the defendant shall not commit another federal, state or local

crime; he shall not illegally possess a controlled substance;

he shall submit to one random drug test within 15 days of his

release of custody and two random drug tests thereafter; he

shall not possess a firearm or other destructive device; and he

shall cooperate in the collection of DNA as requested by

Probation.

There will be standard conditions 1 through 13 and the

follow special conditions:  He shall provide the Probation

Office with any requested financial information; he shall

submit his person, vehicle, place of residence to reasonable to

searches as requested by Probation; he shall obey all

immigration laws and directives; he is to report to the nearest

Probation Office within 72 hours from his release from custody;

and he shall be supervised in his district of residence.

The special assessment has already been imposed.  For

both counts there was a 200-dollar special assessment

previously imposed.  So the Court does not reimpose it nor does

the Court find it is appropriate to change Judge Griesa's

F4t6gars

1   determinations as to a fine, which there was none.  Forfeiture,

2   none.  Restitution, none.

3          Do counsel have any legal or other reason why sentence

4   should not be imposed as stated?

5          MR. FERRARA:  I have no reason, your Honor.  I would

6   note, your Honor, the Bureau of Prisons asks us and apparently

7   it is helpful if your Honor in the judgment actually cites to

8   5G1.3.  It is helpful to them for what they are doing.

9          THE COURT:  So the Court will note that 5G1.3 is the

10  reason for the calculation as indicated.

11         MR. DiCHIARA:  Judge, I have a question.  In the event

12  that the Bureau of Prisons does not credit my client the way

13  the Court decided he should be credited, do we come back for

14  resentencing?

15         THE COURT:  Well, there shouldn't be any resentencing,

16  but my sentence will be as stated.  If the Bureau of Prisons

17  needs any clarification, it has in the past have asked the

18  Court for its view as to the calculation.  The view is really

19  quite straightforward.  5G1.3 he gets credit for serving on the

20  state crime.  So whatever that is, it is three years or

21  slightly less than three years.

22         MR. DiCHIARA:  I just get concerned because of the

23  fact that the guidelines -- I have had clients tell me that the

24  Bureau of Prisons does what it wants and then you end up in a

25  letter-writing campaign with the Court.  The guidelines

F4t6gars

1    specifically talk about adjusting the sentence downward and

2    perhaps the better decision here is to not finalize the

3    judgment until the prosecutor and I speak to the Bureau of

4    Prisons with the prosecutor's office.

5           THE COURT:  I am happy to hold for a few days.  I will

6    not want to hold it more than a week --

7           MR. DiCHIARA:  I understand.

8           THE COURT:  -- to get it finalized so you folks get

9    some clarity on how to word it so it is best geared towards

10   achieving the goal, and I think we're all in agreement it

11   should be achieved.  The other way of proceeding would be to go

12   with a habeas petition based upon a failure to give credit and

13   release in the manner in which ordered by the Court, but that

14   is big guns and it would better not to have to go down that

15   route.  That would be some time from now as well.

16          MR. DiCHIARA:  I am trying to avoid that.

17          THE COURT:  That would be many years from now.

18          MR. DiCHIARA:  I have worked with Mr. Ferrara before.

19   I would rely on whatever he says that the Bureau of Prisons

20   says is the appropriate time.  I have no reason to doubt that.

21   If he says he needs a two-year adjustment or three-year

22   adjustment, I would accept that.

23          THE COURT:  I think that then the wording we had

24   reached was the wording which is, He should get full credit for

25   that time under 5G1 but if he has already received credit, he

F4t6gars

1    should not get that credit a second time.

2              MR. DiCHIARA:  If Mr. Ferrara feels that is

3    satisfactory for him to get credit and he is confident with

4    that, then I will go with that.

5              MR. FERRARA:  I am happy to double-check.

6              THE COURT:  We'll hold this for a few days and we'll

7    connect with you folks before we sign and post and docket the

8    judgment to try to get some clarity on that language.

9              The Court does impose sentence as stated.  I note that

10   open counts have been dismissed.  I think there were not any

11   open counts, but there may have been an underlying indictment.

12   It was dismissed in connection with the last sentencing.

13             MR. FERRARA:  Correct.

14             THE COURT:  Mr. Nunez Garcia, I want to instruct you

15   as to your appeal rights.  You have a right to appeal.  Any

16   notice of appeal has to be filed within 14 days of the filing

17   of the judgment of conviction.  If you can't afford the cost of

18   an appeal, you can apply to have those costs waived.  That is

19   called proceeding in forma pauperis.

20             Anything other applications?

21             MR. FERRARA:  Not from the government, your Honor.

22             MR. DiCHIARA:  No, your Honor.

23             THE COURT:  We're adjourned.  Thank you.

24                           o0o

25